OPINION
{¶ 1} This is an appeal as to certain decisions of the Probate Court of Delaware County.
 STATEMENT OF FACTS AND CASE {¶ 2} The primary issue as stated by Appellant is the asserted error by the court in adjusting the beneficial share of Appellant, Julie Peterman, by an estate indebtedness resulting from a deficiency balance on a repossessed 1985 Honda automobile titled in the name of the decedent, but referenced in a writing between her and Appellant. Certain other issues are also raised relative to real estate and personal property.
 {¶ 3} We shall direct our attention to Appellant's revised brief filed January 20, 2004, rather than that of December 11, 2003, which does not conform to Appellate Rule 9(B) of this Court as to length nor to the preciseness of the Assignments of Error required by Appellate Rule 5:12.
 {¶ 4} Josephine Shively died on December, 1997. At the time of her death, she and Appellant were residing together in Ms. Shively's residence.
 {¶ 5} In November, 1997, they had signed the following handwritten memorandum:
 {¶ 6} "The reason my aunt Josephine Shively bought the 95 Honda Accord LX is because my niece Julie Clark Shively couldn't get a loan because of bad credit because of ex-husband She told me (Josephine) that she (Julie) would make all the payments on the car. When the car is payed off it was going to be Julie's car. That was the purpose of the loan."
 {¶ 7} The Will of Josephine Shively provided as to Appellant:
 {¶ 8} "ITEM II. I grant to my niece, JULIE CLARK SHIVELY, aka JULIE SHIVELY, the right to live together with her two daughters in the residence property for a period of up to six months after my death, upon payment of utilities and simple maintenance."
 {¶ 9} "ITEM III. (d) To my niece, JULIE CLARK SHIVELY aka JULIE SHIVELY, presently residing with me, I give One-Eighteenth (1/18) of the residue of my estate, if she shall survive me."
 {¶ 10} Appellant continued to possess the vehicle and pay the loan payments for a period of time after Ms. Shively's death.
 {¶ 11} A difference appears in the briefs as to how the repossession and ultimately the deficiency arose in that Appellant claims the Executor instigated the repossession, which he denies.
 {¶ 12} In any event, after sale of the Honda for less than the loan balance, the Executor moved to reduce the one-eighteenth share of Appellant by such indebtedness.
 {¶ 13} Appellant has denied the authority of the Probate Court to charge her with such indebtedness, questions the procedure of sale of the residence property and certain personal property.
 {¶ 14} Appellant was also charged with utilities from her aunt's date of death to March 9, 1998.
 {¶ 15} In the brief of January 20, 2004, Appellant raises the following three Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 16} "I. In the judgment entry filed on August 27, 2002, which was confirmed in the final appealable order judgment entry filed on October 14, 2003, the trial court erred when it ordered that there be an offset against beneficiary-appellant, julie peterman's share of the estate in the total amount of $5,423.12; and more specifically the trial court erred regarding the offset in the amount of $4,902.95 for a Honda Motor Vehicle Loan.
 {¶ 17} "II. In the judgment entries filed on August 27, 2002, July 19, 2002, June 23, 2002, March 10, 2002, and January 26, 1998, which were confirmed in the final appealable order judgment entry filed on October 14, 2003, the trial court erred when it ordered that appellant's share of the estate be reduced and that appellant be removed from possession of the residence property because the probate court had no jurisdiction to make such a ruling and appellant was not afforded proper due process.
 {¶ 18} "III. In the judgment entry filed on June 23, 1998, which was confirmed in the final appealable order judgment entry filed on October 14, 2003, and in the judgment entry filed on October 14, 2003, the trial court erred when it made orders regarding real estate and estate personal property matters."
 I, II, III. {¶ 19} We shall address each of the Assignments of Error together as they relate to the October 14, 2003 entry of the trial court.
 {¶ 20} While the notice of appeal recites that it is an appeal from such entry and all previous entries, the latter reference to other entries preceding that of October 14, 2003, does not comply with Appellate Rule 3(D) which requires that the notice of appeal shall designate the judgment order or part thereof appealed from.
 {¶ 21} Therefore, our consideration shall be limited to the entry of October 14, 2003, and not to any of the numerous prior entries except as the October entry includes prior determinations.
 {¶ 22} The ruling of October 14, 2003, arose out of a 60(B) motion filed by Appellant on August 13, 2003, which stated:
 {¶ 23} "Now comes the Estate Beneficiary, Julie Peterman (henceforth Beneficiary), by and through her attorney, Philip L. Proctor, pursuant to Ohio Rules of Civil Procedure, Rule 60(B) who moves the Relief from Judgment regarding the Judgment Entry filed on August 27, 2002 as it relates to the matter of the Honda Motor Vehicle. Beneficiary also moves for such further relief as justice and equity so requires. This motion is based upon the Memorandum that follows herein."
 {¶ 24} The remainder of the October Entry was in regard to 21 exceptions to the final account filed by Appellant.
 {¶ 25} The memorandum in support of the 60(B) motion is premised on the following argument:
 {¶ 26} "Beneficiary contends that the issue of whether there was a contract for the Honda motor vehicle is, in actuality, moot. Any contract for the Honda would have been utterly void or at least unenforceable for the following reasons:
 {¶ 27} "A. The Honda was subject to a perfected security interest which applied only as to decedent, Josephine Shively;
 {¶ 28} "B. The certificate of title for the Honda was titled solely in the name of decedent; and
 {¶ 29} "C. The vehicle was registered and licensed only in the name of decedent."
 {¶ 30} In furtherance of such argument, Appellant relies on R.C. 4505.03, 4505.032, 4505.04, 4505.10 and 4503.12 in quoting and statement:
 {¶ 31} "No person . . . shall sell or otherwise dispose of a motor vehicle without delivering to the buyer or transferee of it a certificate of title with an assignment on it as is necessary to show title in the buyer or transferee; nor shall any person . . . buy or otherwise acquire a motor vehicle without obtaining a certificate of title for it in the person's name in accordance with this chapter."
 {¶ 32} "The only exceptions to this rule are found under ORC Section 4505.032 for transfer of an automobile to a dealer and ORC section 4505.11 regarding when a vehicle loses its characteristic as a motor vehicle and becomes a salvage vehicle. Obviously, neither of the exceptions would apply herein.
 {¶ 33} "Furthermore, to make matters even more clear, ORC Section 4505.04 states as follows:
 {¶ 34} "(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle . . . and no waiver or estoppel operates in favor of such person against a person having possession of the certificate to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.
 {¶ 35} "(B) . . . NO COURT SHALL RECOGNIZE the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
 {¶ 36} "(1) By a certificate of title . . .
 {¶ 37} "(2) By admission in the pleadings or stipulation of the parties;
 {¶ 38} "(3) In an action by a secured party . . . by an instrument showing a valid security interest." (Emphasis Added.)
 {¶ 39} "The only exception to this is found in ORC Section4505.10 which deals with passing title to a motor vehicle in an inheritance, bankruptcy, replevin, or execution sale. However, even when ORC Section 4505.10 applies, certain conditions have to be met, affidavits filed, a statement of lien set forth, and there must be a court order before the interest can be transferred by the clerk. Thus, clearly ORC Section 4505.10 would not apply herein.
 {¶ 40} "Furthermore, the law in Ohio does not stop with security interest and certificate of title statutes. Additionally, all operating vehicles in Ohio are required to be registered and licensed in the name of the owner. ORC Section4503.12 requires that all vehicles immediately be registered and licensed in the name of the owner upon transfer of ownership."
 {¶ 41} We shall then review the 60(B) Motion since it relates to the Honda automobile and ultimately to the reduction in the distributive share of Appellant to protect the estate of decedent from the deficiency balance.
 {¶ 42} While no subdivision under Civil Rule 60(B) was identified in the motion, we must assume that 60(B)(5) was intended as the other reasons are inapplicable. No evidence was presented by Appellant at the October 6, 2003 hearing on such motion and the exceptions except as to the cross-examination of Appellee's witness.
 {¶ 43} As to such motion, the court ruled:
 {¶ 44} "Julie Peterman's inheritance has been previously ordered to be reduced by the amount paid by the estate to the lender of the Honda. The Motor Vehicle Certificate of Title Law in Ohio does not prevent or preclude contracts pertaining to arrangements for purchase such as the agreement between decedent and Julie Peterman for the Honda."
 {¶ 45} We agree with the court that the concepts argued by Appellant as to Revised Code Chapter 4505 being totally inapplicable. Such sections involve the requirements of a certificate of title to a vehicle being the only evidence of ownership and as to recorded liens thereon. In the case sub judice, we are not addressing the ownership of such vehicle nor the validity of the lien thereon from which the deficiency balance arose but are concerned with the validity of the writing between the deceased and Appellant as to the recited promise by Appellant to pay the vehicle debt to which the decedent obligated herself for the recited benefit of Appellant.
 {¶ 46} The only question in this regard is the Statute of Frauds which states:
 {¶ 47} "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05.
 {¶ 48} We find that the agreement between the deceased and Appellant meets the requirements of R.C. 1335.05 and validly obligates Appellant to pay the debt of decedent, that being the deficiency balance.
 {¶ 49} The question then arises as to the authority of the court to allocate such indebtedness to Appellant's distributive share as the estate was obviously liable to Key Bank and, as stated, Appellant was liable to the decedent and her estate to satisfy such debt.
 {¶ 50} R.C. 2101.24 provides in part:
 {¶ 51} "(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction;
 {¶ 52} "(c) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;
 {¶ 53} "(l) To render declaratory judgments, including, but not limited to, those rendered pursuant to Section 2107.084 of the Revised Code;
 {¶ 54} "(m) To direct and control the conduct of fiduciaries and settle their accounts;
 {¶ 55} "(B)(1) The probate court has concurrent jurisdiction with, and the same powers at law and in equity as, the general division of the court of common pleas to issue writs and orders, and to hear and determine actions as follows:
 {¶ 56} (a) "If jurisdiction relative to a particular subject matter is stated to be concurrent in a section of the Revised Code or has been construed by judicial decision to be concurrent, any action that involves that subject matter;
 {¶ 57} "(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."
 {¶ 58} Under such Section, we find that the court did possess the jurisdictional authority to, in effect, require that Appellant save the estate harmless as to such debt by a charge against her distributive share.
 {¶ 59} It is interesting to note that Appellant's counsel makes the exact opposite argument as to jurisdiction being present as to reduction in his client's distributive share to pay the court reporter's debt as to which he was being charged. (T. at 93, exception 13).
 {¶ 60} Since, as to the First Assignment, no evidence on the 60(B) motion was submitted by Appellant, justifying the vacation of the court's prior determination and the presentation by Appellant's counsel related to legal, rather than factual matters as to the Honda balance and the court's authority as to which we have agreed with the trial court, the First Assignment and that portion of the Second Assignment as to reduction of Appellant's distributive share are rejected.
 {¶ 61} The balance of the Second Assignment relates to an assertion that Appellant was removed from the residence to which she had six months occupancy rights under the Will.
 {¶ 62} The court's ruling was:
 {¶ 63} "Julie Peterman negotiated and agreed to abandon the property and right to use as of March 8, 1998 and has no claim for loss of use beyond March 9, 1998."
 {¶ 64} As we are addressing on this appeal the October 14, 2003 entry, as supported by the evidence presented on October 6, 2003 and nothing was presented as to Exception No. 12, the remainder of the Second Assignment is denied.
 {¶ 65} The Third Assignment questions matters relating to real and personal property. These are addressed in Exceptions, 1, 2, 3, 4, 5 and 15.
 {¶ 66} The court's decisions as to such exceptions are, respectively:
 {¶ 67} "#1: The purchaser of the Route 42 property had previously sold a property and bought the Route 42 property as a Like Kind Exchange on a previous sale. The Estate did not purchase any real estate.
 {¶ 68} "#2: The Executor has power of sale under the Will. The Morrow County property was sold for $12,000.00, was accounted for in a previously filed and approved account, notice was given to heirs and co-owners of the eight equal shares and the sale was proper and approved.
 {¶ 69} "#3, The sale of the Morrow County property was made to the Executor's mother. Executor gave notice to all heirs and seven other co-owners. The one-eighth share had limited marketability and the other owners and heirs made no greater offer and declined to purchase this one-eighth share owned by decedent.
 {¶ 70} "#4: The Morrow County property consisted of approximately 54 acres with two dwellings owned by eight people with eight equal shares. The farm has not been rented for farming since well before decedent's death. One dwelling is uninhabitable. The other dwelling was occasionally rented and needed extensive repairs. Taxes and expenses exceeded rental income. There was no positive cash flow and no income to this estate.
 {¶ 71} "#5: The sale of the Winter Street property was under the Executor's power of sale, was arms length and was proper. The property was condemned and the estate was gifted the other one-half interest by the other owners.
 {¶ 72} "#15: Julie Peterman alleges a claim against the executor/estate for personal property of hers taken by Executor. This issue is a claim by Ms. Peterman against the estate which has been rejected and is the subject of a civil action by Ms. Peterman against the estate. This Court has no jurisdiction except as Exception to the Inventory. None was filed."
 {¶ 73} As no evidence was presented as to these exceptions except as to cross-examination at the October 6, 2003 hearing, and nothing appears to controvert the court's findings, the Third Assignment is overruled.
 {¶ 74} This cause is affirmed.
Boggins, J. and Farmer, P.J concur.
Hoffman, J., dissents.